977 P.2d 839

**Dale F. WEBB, M.D., Plaintiff–Appellant,**

**v.**

**The STATE of Arizona, By the ARIZONA BOARD OF MEDICAL EXAMINERS, an administrative agency of the State of Arizona, Defendant–Appellee.**

**No. 1CA–CV97–0431.**

Court of Appeals of Arizona,
Division 1, Department C.

April 15, 1999.

Law Offices of Michael E. Bradford by Michael E. Bradford Jeffrey L. Bradford, Phoenix, for Plaintiff–Appellant.

Janet A. Napolitano, The Attorney General by Victoria M. Mangiapane, Assistant Attorney General, Phoenix, for Defendant–Appellee.

## OPINION

FIDEL, Presiding Judge.

¶ 1 The superior court, finding that Dale F. Webb, M.D., had failed to exhaust his administrative remedies, dismissed his complaint seeking judicial review of the decision of the Arizona Board of Medical Examiners ("BOMEX") to censure him for unprofessional medical treatment of a patient. Dr. Webb's appeal presents the question whether, by filing an insufficiently detailed request for administrative rehearing, Dr. Webb deprived BOMEX of jurisdiction to consider rehearing, left his administrative remedies unexhausted, and deprived the superior court of authority to conduct judicial review. For the following reasons, we reverse the trial court's decision and remand for proceedings consistent with this decision.

## I.

¶ 2 After investigating a complaint against Dr. Webb by a former patient, BOMEX requested that he appear for an informal interview.[1] BOMEX advised him of his right to appear with legal counsel, but Dr. Webb chose to appear and testify alone. After considering the testimony and written record, BOMEX voted to issue Dr. Webb a decree of censure,[2] citing him for "conduct or practice which is or might be harmful or dangerous to the health of the patient or the public"[3] and "conduct that the board determines is gross negligence, repeated negligence or negligence resulting in harm to or the death of a patient."[4]

¶ 3 On April 30, 1996, the executive director of BOMEX served a copy of the Board's "Findings of Fact, Conclusions of Law, and Decree of Censure" upon Dr. Webb. Fourteen days later, on May 14, 1996, Dr. Webb, still acting on his own behalf, faxed a letter to the executive director, which stated in its entirety:

> I wish to appeal the decision to censure made on April 18th, 1996. Please send me whatever is required for this process. Your letter on April 30th, 1996[ ] does not addr[e]ss this process.

On May 15, 1996, the executive director faxed Dr. Webb the following response:

> Thank you for your letter of May 14, 1996. You will find enclosed a copy of the Board's re-hearing rule, R4–16–102.

> For your information, you could have found this rule on page 10 of your 1995–1996 *Arizona Medical Directory*, sent to you in October by the Board.

¶ 4 On May 24, 1996, Dr. Webb wrote the executive director that he had already read the suggested page of the *Arizona Medical Directory*, but had found the entry "vague and uninformative." He asked if there was a form he needed to complete and specific points he needed to address. In a responding letter on May 31, the executive director stated,

> There is no form required to file a Request for Rehearing or Review.

> While there are *no specific questions* to be addressed in your Request for Rehearing

---

1. The Board is authorized to investigate complaints filed against doctors who are subject to its regulation and to request informal interviews with the doctors pursuant to Arizona Revised Statutes Annotated ("A.R.S.") § 32–1451(G) (Supp.1998).

2. A decree of censure is one of the disciplinary actions the board may take pursuant to A.R.S. § 32–1451(G)(4) (Supp.1998).

3. *See* A.R.S. § 32–1401(25)(q) (Supp.1998).

4. *See* A.R.S. § 32–1401(25)(ll) (Supp.1998).

..., you may wish to cite those grounds for a rehearing (listed under AAC R4–16–102(C)) which you believe to apply to your specific case and tell why you believe they apply.

In a June 10, 1996, reply, Dr. Webb first asserted specific grounds for rehearing, invoking the grounds set forth in Arizona Administrative Code ("A.A.C.") R4–16–102(C)(1), (2), (5), (6), and (7), and alleging that BOMEX had wrongly precluded him from introducing supportive textual material, had considered "prejudicial, inflammatory and grossly misleading" evidence, and had denied him "the fundamentals of a fair hearing."

¶ 5 Dr. Webb then hired a lawyer, who contacted one of the two assistant attorneys general representing BOMEX to discuss the status of Dr. Webb's rehearing request. The assistant attorney general later summarized their conversation for BOMEX at the BOMEX hearing on the motion for rehearing. She stated,

When counsel originally called me about this case he asked me if the state intended to argue that the doctor's papers were late and I said that I had read the doctor's first letter and that we would regard the first letter as a request for reconsideration and to my count that letter was not late. We did not discuss the content of the letter whether it was legally sufficient or not. I also told him that the rehearing rule provided for an amendment.[5]

¶ 6 Dr. Webb's lawyer filed an amended motion for rehearing on June 27, 1996, reiterating that the Board had wrongly precluded Dr. Webb from introducing textual evidence and that the Board's decision was unsupported by the evidence it did consider. The State responded that rehearing was unwarranted on the merits and, in addition, was precluded because Dr. Webb had not filed a sufficiently specific request for rehearing within the time provided to do so by BOMEX rule.

¶ 7 At oral argument on Dr. Webb's request for rehearing, the State again advanced its dual position (1) that Dr. Webb had untimely specified his grounds for rehearing and (2) that his specified grounds lacked merit. During the discussion that followed, none of the Board members who spoke addressed or endorsed the procedural question of timely specificity, whereas several addressed the merits.

¶ 8 Dr. Waldo, the first to do so, stated, "I recall the original hearing very well. I think Doctor Webb presented his case. I recommend that it be denied." Another Board member then formally moved to deny rehearing, without specifying the basis for his motion, and a third member seconded the motion, also without specifying the basis. Dr. Keen then spoke in favor of denying rehearing on the merits, stating, "legal procedures notwithstanding the merits of the case are such that I would not consider this worthy or necessary to reconsider." Ms. Dooley then spoke in favor of granting rehearing on the merits, stating:

We're dealing with human beings. A Decree of Censure, although I'm new on the board, that's about the most serious thing that can be given other than taking a doctor's license away. In reading the transcript and in reading what the doctor's care was it seems to me that he made an excellent effort on trying to care for the patient, the patient did not come back for care, and I understand I shouldn't be trying to second guess your decision on that portion of it, but I see a doctor here who's been in the medical profession for many years, I see that he made an honest effort and if he feels that his case was not heard by the board, that's kind of an unfair way for him to have to walk away from this room when he devoted as many years as he has. [It would not h]urt this board in any way to allow this fine physician to at least feel that he's been able to present his case properly. That's all I have to say.

¶ 9 Before the vote was taken, Dr. Webb's lawyer asked the chairman for a motion that would clarify "the reason that a rehearing is

<hr>

5. In a subsequent affidavit filed with the trial court, the assistant attorney general stated that she did not have the May 14 letter in front of her when she spoke with the lawyer for Dr. Webb, and that her fellow BOMEX counsel, who handled the Webb proceeding, later chose to treat the May 14 letter as "a mere inquiry about the appeals process, rather than a request for rehearing or review."

denied." The chairman declined to request such a motion, stating:

> I'm not sure that is necessary but we have the reasons as expressed by Mr. McGee, the timeliness, and also have a statement by Doctor Keen regarding the medical issues involved. To me that seems you had two specific reasons expressed to you at this time.

BOMEX then voted six-to-three in favor of the motion to deny rehearing.

¶ 10 After BOMEX entered a formal order denying rehearing, Dr. Webb filed a timely complaint for judicial review, which BOMEX moved to dismiss on the ground that Dr. Webb had failed to properly and timely exhaust administrative remedies. The sole question considered by the trial court was whether Dr. Webb's letter of May 14, 1996, sufficed to meet the requirements of BOMEX's rehearing rule. Finding that it did not, the trial court concluded that Dr. Webb did not exhaust administrative remedies. From the trial court's judgment in favor of BOMEX, Dr. Webb files this timely further appeal.

## II.

¶ 11 We consider whether the trial court correctly determined from the applicable statutes and administrative rules that judicial review of the administrative decision was barred due to Dr. Webb's failure to file an adequately specific motion for rehearing within the time prescribed. We review this determination *de novo*. *See Owens v. City of Phoenix*, 180 Ariz. 402, 405, 884 P.2d 1100, 1103 (App.1994).

¶ 12 We conclude that the trial court erred. This matter was litigated in the superior court, resolved by the superior court, and briefed and argued to this court upon the mistaken premise that, as a jurisdictional prerequisite to a complaint for judicial review of a BOMEX decision, the party seeking

review must first exhaust all administrative remedies, including a timely request for rehearing by the Board.

■ ¶ 13 Such was this court's holding in *Rosen v. Board of Medical Examiners*, 185 Ariz. 139, 143, 912 P.2d 1368, 1372 (App. 1995). But our *Rosen* holding was recently expressly disapproved by our supreme court. *See Southwestern Paint & Varnish Co. v. Arizona Dep't of Envtl. Quality*, 1999 WL 138771 at *3, —— Ariz. ——, at ¶ 12, 976 P.2d 872, at ¶ 12 (1999). According to the *Southwestern* decision, although an administrative agency such as BOMEX must provide an opportunity for rehearing, a party aggrieved by an agency decision need not seek rehearing as a jurisdictional precondition to judicial review. *Id.* at ¶ 13.

¶ 14 Here, Dr. Webb did request rehearing, and the parties debate the jurisdictional significance of the procedural deficiencies in his request. Our review of that question is informed, after the issuance of *Southwestern*, by the determination that the administrative rehearing process was one that Dr. Webb lacked any jurisdictional obligation to exhaust.

### A.

¶ 15 The Board of Medical Examiners has adopted a rule that permits aggrieved parties to request rehearing of its decisions. *See* A.A.C. R4–16–102. An aggrieved party has fifteen days after an administrative decision to file a motion for rehearing. *See* A.A.C. R4–16–102(A), as interpreted in *Dioguardi v. Superior Ct.*, 184 Ariz. 414, 418, 909 P.2d 481, 485 (App.1995).[6]

¶ 16 On the fourteenth day after service of BOMEX's decision, Dr. Webb submitted a letter to the executive director stating his "wish to appeal the decision to censure." Although we now know that Dr. Webb had

---

6. Subsection (A) of A.A.C. R4–16–102 provides in relevant part:

> [A]ny party in a contested case before the Board who is aggrieved by a decision rendered in such case may file with the Board, not later than ten days after service of the decision, a written motion for rehearing or review of the decision specifying the particular grounds therefor. For purposes of this subsection, a

decision shall be deemed to have been served when personally delivered or mailed by certified mail to the party at his last known residence or place of business.

The ten-day requirement of R4–16–106(A) has been judicially invalidated and expanded to fifteen days. *See Dioguardi*, 184 Ariz. at 418, 909 P.2d at 485.

no obligation to request rehearing, the question remains whether this initial letter constituted a request for rehearing. If it did, Dr. Webb's time to file a complaint for judicial review did not begin to run until BOMEX had formally ruled on his request;[7] if it did not, Dr. Webb's time to file a complaint for judicial review began to run upon the service of BOMEX's "Findings of Fact, Conclusions of Law, and Decree of Censure" on April 30, 1996, and had expired long before September 6, 1996, when his complaint for judicial review was filed.

¶ 17 Two deficiencies underlie the question whether Dr. Webb's May 14 letter constituted a request for rehearing: (1) the document was in letter form, not motion form, and spoke of "appeal" rather than "rehearing"; (2) the document specified no grounds—Dr. Webb first stated his grounds in June.

¶ 18 Taking these deficiencies in order, a BOMEX lawyer initially suggested to Dr. Webb's lawyer that it would treat Dr. Webb's letter as a request for reconsideration and would not regard the letter as late. We need not resolve the parties' debate over the attribution of waiver or estoppel to this conversation. We dispose of the issue simply by concluding that the first reaction of BOMEX's counsel was correct. That Dr. Webb filed a letter rather than a motion and spoke of appeal rather than rehearing are points of form, not substance; such technical defects are frequently, and properly, overlooked at every level of the courts. *See Rodriquez v. Williams*, 104 Ariz. 280, 283, 451 P.2d 609, 612 (1969) (stating that reviewing courts prefer to look to substance rather than form); *see also* Ariz. R. Civ. P. 8(e) ("No technical forms of pleading or motions are required."); *Porterfield v. Black Bill & Doney Parks Water Users' Ass'n*, 69 Ariz. 110, 113, 210 P.2d 335, 337 (1949) (stating that no technical forms of pleadings or motions are required in Arizona). Leaving aside the question of specificity, we find that the letter sufficed to constitute a timely request for rehearing.

### B.

¶ 19 The more significant question arises from Dr. Webb's failure, in his initial letter, to specify the grounds on which he sought rehearing. The State argues that this omission rendered the letter jurisdictionally deficient; Dr. Webb argues that the omission lacked jurisdictional significance and was cured by later amendment.

¶ 20 R4–16–102(A) describes a motion for rehearing as one "specifying the particular grounds therefor"; R4–16–102(B) provides that the motion "may be amended at any time before it is ruled upon by the Board"; and R4–16–102(C) lists the grounds upon which rehearing or review may be granted, corresponding generally to the grounds set forth in Rule 59(a) of the Arizona Rules of Civil Procedure.

¶ 21 Comparing the specificity requirement of R4–16–102(A) to that of Rule 59, the State argues that, because A.R.S. § 41–1062(B) directs BOMEX to draw its rehearing requirements "as closely as practicable" from Rule 59, BOMEX is statutorily barred from permitting an inadequately specific request for rehearing to be cured by subsequent amendment. In making this argument, the State relies specifically upon *Butler Products Co. v. Roush*, 145 Ariz. 32, 699 P.2d 906 (App.1984), in which this court concluded that a party could not cure, by subsequent amendment, the failure to specify grounds in an otherwise timely motion for new trial. *Id.* at 33, 699 P.2d at 907. A similar interpretation, according to the State, must be given to R4–16–102(A).

¶ 22 We disagree. In *Dioguardi*, comparing BOMEX's ten-day deadline for motions for rehearing with Rule 59's fifteen-day deadline for motions for new trial, we interpreted A.R.S. § 41–1062(B) as precluding BOMEX from drafting a rehearing rule that so substantially and unjustifiably departed from the provisions of Rule 59. 184 Ariz. at 418, 909 P.2d at 485. Specifically, we found it a substantial and unjustified departure to "shorten[ ] by one-third ... an already abbreviated period within which to act to preserve one's license and livelihood." *Id.*

¶ 23 We took care in *Dioguardi*, however, to recognize that "an agency need not draft a rehearing rule that is identical to Rule 59." *Id.* at 417, 909 P.2d at 484. We noted, for example, that the BOMEX countdown for

7. *See* A.R.S. § 12–904(A) (Supp.1998).

filing permissibly runs from date of service, whereas the Rule 59 countdown runs from entry of judgment. *Id.* Further, we said nothing in *Dioguardi* to suggest that BOMEX is statutorily obliged to interpret R4–16–102(A) precisely as the Arizona courts interpret Rule 59.

¶ 24 Turning specifically to *Butler*, we acknowledge our holding that a party cannot cure, by subsequent amendment, an absence of specificity in an otherwise timely Rule 59 motion for new trial. 145 Ariz. at 33, 699 P.2d at 907. Yet we find nothing in that interpretation so integral to the operation of a fair rehearing process as to bind BOMEX to similarly administer its rehearing process under R4–16–102.[8] Given the jurisdictional immateriality of rehearing after *Southwestern*, we see no reason to inhibit the Board's flexibility in accepting amendments from those who do move for rehearing. We therefore reject the assertion that BOMEX is precluded by *Butler* from accepting an amendment pursuant to R4–16–102(B) to a request for rehearing that would otherwise be deficient pursuant to R4–16–102(A).

¶ 25 The question then arises whether BOMEX in fact treated Dr. Webb's initial request for rehearing as amendable or as fatally and unamendably deficient in specificity. To the extent that the record is ambiguous on this point, we resolve the ambiguity in favor of preserving the right to appeal and against the forfeiture of that right upon a technicality. *Cf. Hill v. City of Phoenix,* —— Ariz. ——, at ¶ 10, 975 P.2d 700, at ¶ 10 (1999) ("[A]n overriding purpose of the Rules of Civil Procedure is to dispose of cases on the merits where errors in procedure can be characterized as harmless and non-prejudicial."). Here, the record is somewhat ambiguous as a consequence of the Chairman's rejection of Dr. Webb's request to clarify whether the motion before the Board was to reject his request for rehearing as procedurally defective or to deny it on the merits. Yet to the extent that the record permits a conclusion, the record suggests that BOMEX considered and denied rehearing on the merits. As we indicated in our summary of the proceeding, no Board member addressed, much less endorsed, the State's argument that Dr. Webb's motion was untimely. To the contrary, the only Board members who spoke on the subject addressed, and debated, rehearing on the merits.

¶ 26 We therefore conclude that the BOMEX denial of rehearing, the order that triggered Dr. Webb's judicial review proceeding in the superior court, constituted a denial of rehearing on the merits and a formal conclusion to the administrative process.

### III.

¶ 27 In conclusion, we find that, although Dr. Webb filed an insufficiently detailed request for administrative rehearing, once he supplemented that request by stating his grounds, BOMEX permissibly reached the merits of his request and formally denied rehearing on the merits. As Dr. Webb filed a timely complaint for judicial review thereafter, there was no jurisdictional impediment to the superior court's consideration of that complaint. For the foregoing reasons, we reverse the dismissal of his complaint and remand for proceedings consistent with this opinion.

JEFFERSON L. LANKFORD, Judge, and SARAH D. GRANT, Judge, concur.

---

8. We note that the federal circuits divide over the permissibility of a cure, by subsequent amendment, of a specificity defect under the federal counterpart to Rule 59. *Compare Roy v. Volkswagenwerk Aktiengesellschaft,* 781 F.2d 670, 671 (9th Cir.1985) *with Registration Control Sys., Inc. v. Compusystems, Inc.,* 922 F.2d 805, 809 (Fed. Cir.1990). The division in the circuits demonstrates that it is not inimical to the purpose of Rule 59 to treat nonspecificity as an amendable deficiency.